# In the United States Court of Federal Claims

No. 13-565C

(Filed: February 24, 2014)

| | |
|---|---|
| ********************************** | Military pay case; incarceration; applicability of the forfeiture provisions of 37 U.S.C. § 503(a); separation pay; time on "active duty;" improper proceedings before a board of inquiry; no entitlement to monetary relief |
| TROY ALLEN LEWIS, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | |
| Defendant. | |
| ********************************** | |

Vincent A. Jankoski, Silver Spring, Maryland, for plaintiff.

Nathanael B. Yale, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, Bryant G. Snee, Acting Director, and Deborah A. Bynum, Assistant Director, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, D.C.  Of counsel was Major Cindie Blair, Office of the Judge Advocate General, General Litigation Division (Code 14), United States Marine Corps.

## OPINION AND ORDER

LETTOW, Judge.

In this military pay case, plaintiff, Troy Allen Lewis, a discharged ensign in the United States Navy ("the Navy") seeks back pay, including basic pay and allowances, from September 15, 2007 to the present.  Am. Compl. ¶ 6, ECF No. 7.  In the alternative to a portion of the back pay and allowances, he seeks severance pay.  *Id.*  Pending before the court are defendant's Motion to Dismiss, or in the Alternative, Motion for Judgment on the Administrative Record ("Def.'s Mot. To Dismiss"), ECF No. 16, and plaintiff's Motion for Summary Judgment on Count VII ("Pl.'s Cross-Mot."), ECF No. 30, relating to separation pay.

## BACKGROUND

Mr. Lewis was commissioned as an officer in the Navy via the Armed Forces Health Professions Scholarship Program and was training to become a medical doctor at the Uniformed Services University of the Health Sciences (the "Uniformed Services University").  AR-32,

-238, ECF No. 16-1.[1]  While attending the Uniformed Services University, Mr. Lewis was arrested on April 23, 2007, as part of an undercover operation conducted by Washington, D.C. Metropolitan Police.  AR-32.  Mr. Lewis had engaged in an online chat with an individual who claimed to be able to give him sexual access to a ten-year-old girl.  *Id*.  Unbeknownst to Mr. Lewis, that individual was an undercover detective with the police department.  *Id*.  Mr. Lewis arranged a meeting with the undercover detective, which was intended to culminate in a sexual encounter with the fictional ten-year-old girl.  *Id*.  Upon arrival at the agreed upon location, Mr. Lewis was arrested for "attempted coercion and enticement of a minor and travel with intent to engage in illicit sexual conduct."  *Id*.   He was held in federal custody pending a bail hearing, and the court denied bail on May 9, 2007.  AR-92.  Mr. Lewis pleaded innocence, but a jury empanelled in federal district court convicted him of both charges on September 19, 2007, and he was sentenced to 151 months of incarceration.  AR-138, -142.  Mr. Lewis appealed his conviction, but his appeal was denied by the United States Court of Appeals for the District of Columbia Circuit on March 25, 2013.  *United States v. Lewis*, 505 Fed. Appx. 1 (D.C. Cir. 2013).  Mr. Lewis is currently still incarcerated in the federal prison located in Loretto, Pennsylvania.  Joint Statement of Undisputed Facts ("Joint Statement") ¶ 5, ECF No. 28.

Ten months after his conviction, the Navy initiated a Board of Inquiry ("the Board") to determine whether Mr. Lewis should be separated from the Navy.  The Navy represents that it mailed the appropriate notification to Mr. Lewis on or about July 31, 2008, Joint Statement ¶ 9; AR-12, and that it attempted to hand-deliver a second notification on or about September 17, 2008, which Mr. Lewis refused to sign, Joint Statement ¶ 9; AR-358 ¶¶ 4-6.  The Board actually convened on June 8, 2009.  AR-37.  Mr. Lewis was not present before the Board; his counsel, however, was present and read to the Board a handwritten letter prepared by Mr. Lewis.  *See* AR-40, -73 to -74.  Notably, Mr. Lewis' counsel objected to proceeding in Mr. Lewis' absence, but the Board continued *in absentia*.  Joint Statement ¶ 11; AR-40 to -41.  The Board found Mr. Lewis guilty of numerous violations of the Uniform Code of Military Justice and recommended that he be "separated from the naval service on the basis of misconduct and substandard performance."  AR-38.  The Board further recommended that the characterization of his service be under other than honorable conditions.  *Id.*

Based upon the Board's findings, Mr. Lewis was officially separated from the Navy on March 11, 2010 for "Misconduct (Sexual Perversion)" with a characterization of service of "under other than honorable conditions."  AR-35; *see also* Joint Statement ¶ 13.

---

[1]The government filed an administrative record in this case even though Mr. Lewis brought his complaint before the court without previously having presented his claims to the pertinent military corrections board.  As a consequence of this procedural setting, no administrative record is appropriate.  Instead, the court must hear Mr. Lewis' claims as a *de novo* matter and not on review of action by an administrative entity.  Nonetheless, the misstyled "administrative record" contains public records and other documentary materials relevant to Mr. Lewis' claims, and the court has given notice to the parties that it will treat the records and materials as serving in support of a motion by the government for summary judgment.  Hr'g Tr. 30:14 (Feb. 7, 2014).  For convenience, the court will cite the records and materials using the designation "AR-__" despite the inapplicability of the court's rules pertaining to review of agency decisions.

Mr. Lewis' claims appear to be organized around the dates of his criminal conviction and discharge from the Navy.  For the period September 15, 2007 through March 12, 2010, he seeks basic pay in the amount of $119,496.70, subsistence allowance in the amount of $6,220.24, and housing allowance in the amount of $55,264.35, plus any applicable interest.  Am. Compl. ¶¶ 7-15.  For the period March 13, 2010 through the present, Mr. Lewis seeks basic pay in the amount of $177,840.20, subsistence allowance in the amount of $9,407.86, and housing allowance in the amount of $81,853.65, plus any applicable interest.  Am. Compl. ¶¶ 16-24.  In the alternative to his claims for basic pay and allowances from March 13, 2010 to the present, Mr. Lewis makes a claim for severance pay in the amount of $55,329.39, plus interest.  Am. Compl. ¶ 27.

Mr. Lewis responded in opposition to the government's motion to dismiss, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 17, and the government submitted a reply, *see* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply"), ECF No. 20.  A hearing on the merits was held on February 7, 2014, during which the court gave the parties notice that it would treat the government's motion to dismiss as a motion for summary judgment.  The parties then filed the Joint Statement of Undisputed Facts, and Mr. Lewis filed a motion for summary judgment on the count of his complaint that relates to separation pay.  The government's converted motion and Mr. Lewis' cross-motion are ready for disposition.

## JURISDICTION

This court has jurisdiction over Mr. Lewis' claims for back pay, allowances, and separation pay pursuant to the Tucker Act, 28 U.S.C. 1491(a).[2]  Although constituting a grant of jurisdiction, the Tucker Act does not create substantive legal rights.  *See United States v. Mitchell,* 445 U.S. 535, 538 (1980) (citing *United States v. Testan,* 424 U.S. 392, 398 (1976)).  To state a viable cause of action, claimants must also identify a separate source of substantive law creating a right to money damages.  *Id.* at 538.  In this case, Mr. Lewis seeks relief under the Military Pay Act, 37 U.S.C. § 204(a), which provides that a member of a uniformed service who is on active duty is "entitled to the basic pay of the pay grade to which [he is] assigned."  37 U.S.C. § 204(a); *see* Am. Compl. ¶ 1.  Mr. Lewis also seeks relief under 10 U.S.C. § 1174, which, when certain conditions are met, establishes a right to "[s]eparation pay upon involuntary discharge or release from active duty."  10 U.S.C. § 1174 (heading); *see* Am. Compl. ¶ 1.

## STANDARDS FOR DECISION

Because the government is relying on documents outside the pleadings in support of its motion to dismiss, the court must treat its motion to dismiss as a motion for summary judgment, pursuant to Rule 12(d) of the Rules of the Court of Federal Claims ("RCFC").[3]  The government

---

[2]In pertinent part, the Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department . . . ."  28 U.S.C. § 1491(a)(1).

[3]RCFC 12(d) specifies that, "[i]f, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated

urges the court to consider the documents regarding Mr. Lewis' arrest, conviction, and incarceration to be public records, which can be properly considered in deciding a motion to dismiss. *See* Def.'s Reply at 3. Those records, however, are inadequate for resolution of the government's contentions. In the alternative, the government asks the court to consider its motion to be a motion for judgment on the administrative record. This procedural avenue is not available. As noted previously, Mr. Lewis is not requesting that the court review an agency decision but instead is requesting a *de novo* review of whether he is entitled to back pay or separation pay under applicable law. *See supra* at 2 n.1. Therefore, the most appropriate lens through which the court can analyze the government's contentions is by way of a motion for summary judgment. *See Williams v. United States*, 100 Fed. Cl. 263, 265 (2011) (converting government's motion to dismiss, or in the alternative a motion for judgment on the administrative record, to a motion for summary judgment).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). RCFC 56 mirrors Fed. R. Civ. P. 56. *See* RCFC 56 Rules Committee Note, 2011 Amendment ("RCFC 56 has been rewritten in its entirety to reflect the corresponding revision of [Fed. R. Civ. P.] 56 that became effective December 1, 2010."). A fact is material if it "might affect the outcome of the suit under governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and an issue is genuine if it "may reasonably be resolved in favor of either party," *id.* at 250. The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. In this case, the salient facts have been stipulated by the parties.

## ANALYSIS

Mr. Lewis' claims for back pay and allowances or alternatively, for severance pay, necessarily turn on the character and nature of his confinement.

### *A. Back pay and allowances*

For the period September 15, 2007 through March 12, 2010, Mr. Lewis seeks back pay and allowances pursuant to the Military Pay Act, 37 U.S.C. § 204(a). Mr. Lewis has been continuously confined since his arrest in April 2007. At the outset of the claimed period, September 15, 2007,[4] Mr. Lewis was in the midst of his criminal trial. *See* AR-141. He was convicted by a jury on September 19, 2007, *id.*, and he was sentenced on December 19, 2007 to 151 months of incarceration, AR-142.

---

as one for summary judgment under RCFC 56."

[4]Mr. Lewis' claims under the Tucker Act are subject to a six-year statute of limitations, *see* 28 U.S.C. § 2501, and his complaint was filed on August 9, 2013.

4

The government argues that 37 U.S.C. § 503(a) establishes an exception to the general rule that service members are entitled to pay. *See* Def.'s Mot. to Dismiss at 7. Subsection 503(a) provides that "a member of the . . . Navy, . . . who is absent without leave or over leave, forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable." 37 U.S.C. § 503(a). The government asserts that Mr. Lewis has not been unavoidably absent within the terms of Subsection 503(a) and thus is not entitled to pay or allowances for the duration of his incarceration. Def.'s Mot. to Dismiss at 7.

By regulation, the Department of Defense has defined what is and is not an unavoidable absence. "When a member is absent from duty . . . in confinement by civil authorities . . . [and] is tried and convicted," then the absence "may not be excused as unavoidable." Under Secretary of Defense, Department of Defense ("DOD"), 7000.14-R, *Financial Management Regulation*, Volume 7A, Table 1-13, Rule 6 (Apr. 2013), *available at* http://comptroller.defense.gov/fmr/07a.aspx (last accessed Feb. 24, 2014); *see also* DOD 7000.14-R, *Financial Management Regulation*, Volume 7A, Table 1-12, Rule 6 (Apr. 2013).

As precedents supporting its argument that an incarcerated service member is ineligible for pay, the government cites *Matthews v. United States*, No. 10-648C, 2013 WL 1909989 (Fed. Cl. May 7, 2013), *appeal docketed*, No. 2013-5109 (Fed. Cir.)), and *Stone v. United States*, 219 Ct. Cl. 604, 605-06 (1979). Def.'s Mot. To Dismiss at 7. In *Matthews*, an enlisted member of the Navy pled guilty to "coercion and enticement in violation 18 U.S.C. [§] 2422(b) and distribution of child pornography in violation of 18 U.S.C. [§] 2252(a)(2), and was sentenced to prison . . . ." *Matthews*, 2013 WL 1909989, at *1. Mr. Matthews was subsequently administratively discharged from the Navy. *Id*. He brought a claim against the Navy challenging his discharge, alleging entitlement to back pay because he was never properly discharged. *Id*. The court dismissed his claim, holding that "Department of Defense regulations make clear that the absence of a service member who is confined by civilian authorities and is ultimately tried and convicted may not be excused as unavoidable," concluding as a consequence that Mr. Matthews "c[ould] not state a claim for monetary relief." *Id*. at *4. Similarly, *Stone* also held that 37 U.S.C. § 503(a) prevented an incarcerated serviceman's claim for back pay because his absence was not unavoidable. *Stone*, 219 Ct. Cl. at 605-06. Two other prior decisions reached a similar result. *See Austin v. United States*, 206 Ct. Cl. 719, 725-26 (1975) (holding that a service member's absence due to incarceration in a Mexican jail was not unavoidable and that he was not entitled to back pay for the period of incarceration pursuant to 37 U.S.C. § 503(a)), *superseded by statute on other grounds as stated in Todd Constr. L.P. v. United States*, 85 Fed. Cl. 34, 38-39 (2008), *aff'd*, 656 F.3d (Fed. Cir. 2011); *Pinnock v. United States Army*, No. 07-5661 (DMC), 2009 WL 256741, at *3-*4 (D.N.J. Feb. 3, 2009) (holding that plaintiff forfeited back pay because "his absence was due to his incarceration for a civilian conviction, which could not be excused as unavoidable") (citing 37 U.S.C. § 503(a)).

Mr. Lewis counters by relying on *Bell v. United States*, 366 U.S. 393, 394 (1961), a case addressing whether American prisoners of war during the Korean War were entitled to back pay, despite allegations of aiding the enemy. Pl.'s Opp'n at 5. In *Bell*, the Supreme Court held that a soldier is entitled to statutory pay unless (1) the soldier is absent without leave or a deserter or (2) his or her pay is ordered forfeited as a punishment imposed by a court martial. *Bell*, 366 U.S. at 401-02 & n.13. Mr. Lewis asserts that he was neither a deserter nor "absent without leave"

5

within the terms of the pertinent provisions of the Military Personnel Manual ("MILPERSMAN"). Pl.'s Opp'n at 6 (citing Department of Defense, MILPERSMAN, *Deserters*, § 1600-010(d)(4) (Aug. 14, 2007), *available at* http://www.public.navy.mil/bupers-ncp/references/milperson/1000/1600 Performance/Documents/1600-010.pdf). The cited regulation provides that an unauthorized absence is terminated whenever a member "is made available by civil authorities after an arrest for a civil offense." MILPERSMAN § 1600-010(d)(4). Mr. Lewis, without explanation, asserts that he was made available to the Navy subsequent to his arrest. Pl.'s Opp'n at 6. Mr. Lewis' arguments do not take account of the fact that *Bell* dealt with statutes unrelated to the ones at issue here. *See Bell*, 366 U.S. at 398-401. Even if *Bell* were pertinent to this case, Mr. Lewis has failed credibly to explain how he was "made available" to the Navy after his arrest. Mr. Lewis was denied bail prior to his trial, he was convicted, his incarceration was continued immediately upon his conviction, his conviction was affirmed on appeal, and he is still serving his sentence.

Section 503(a) is an insurmountable obstacle to Mr. Lewis' claims for back pay and allowances for any period during which he was incarcerated. This includes both periods for which he seeks back pay, September 15, 2007 through March 12, 2010 and March 13, 2010 through the present. Mr. Lewis' contention that he was improperly discharged from the Navy on March 11, 2010 cannot provide a basis for back pay because he is still incarcerated, and therefore his pay and allowances would continue to be forfeited pursuant to 37 U.S.C. § 503(a).

### *B. Separation Pay*

Mr. Lewis argues that, in the alternative to his claim for back pay for the period since his discharge, he is entitled to separation pay. Am. Compl. ¶¶ 6, 25-27. Under 10 U.S.C. § 1174,

> [a] regular commissioned officer of the Army, Navy, Air Force, or Marine Corps who is discharged under section 630(1)(A), 643, or 1186 of this title . . . who has completed six or more, but less than twenty, years of active service immediately before that discharge or separation is entitled to separation pay computed under subsection (d)(1) or (d)(2), as determined by the Secretary of the military department concerned, *unless the Secretary concerned determines that the conditions under which the officer is discharged or separated do not warrant payment of such pay*.

10 U.S.C. § 1174(a)(2) (emphasis added). Mr. Lewis contends that he had at least six years of active service and that he was a commissioned officer at the time of his discharge. The government disputes that Mr. Lewis had more than six years of active service. *See* Def.'s Status Report, ECF No. 29.

Mr. Lewis' service records show that he spent three years on active duty as an enlisted man, from April 6, 1987 to April 5, 1990, while in the Navy Reserves, serving as a medical corpsman, *see* AR-285, -337, and then spent at least three years as a commissioned officer in the Navy while attending the Uniformed Services University before being arrested in 2007, *see* AR-240. Mr. Lewis' position regarding active service is supported by the agreement executed pursuant to Mr. Lewis' appointment to the

Uniformed Services University, which states that Mr. Lewis "will serve *on active duty* as a commissioned officer of a unformed service in the pay grade 0-1, with full pay and allowance for that grade." AR-241.  Correlatively, 10 U.S.C. § 2114 states that "[m]edical students [at the University] shall be commissioned officers of a uniformed service as determined under regulations prescribed by the Secretary of Defense . . . . They shall be appointed as regular officers in the grade of second lieutenant or ensign and *shall serve on active duty* in that grade." 10 U.S.C. § 2114(b) (emphasis added).  The government nonetheless points out that under a different subsection of this statute, *"[t]he service credit exclusions* specified in section 2126 of this title shall apply to students covered by this section." Def.'s Status Report at 1 (quoting 10 U.S.C. § 2114(c) (last sentence)) (emphasis added).  Those service credit exclusions pertain to "determining eligibility for retirement" and "computing years of service creditable under section 205 of title 37." 10 U.S.C. § 2126(a).  The section cited in the second exclusion concerns computation of years of service for pay purposes.  *See* 37 U.S.C. § 205(a).  In the government's view, the separation pay statute, 10 U.S.C. § 1174, is comparable in effect to the retirement and years-of-service statutes, and accordingly "time spent as a student at the Uniformed Services University does not count towards calculating active duty service time pursuant to the separation pay statute." Def.'s Status Report at 2.

The resulting question of statutory interpretation is a close one.  The government makes the valid point that the years-of-service statute for pay is closely analogous in purpose to the years-of-active-service term in the separation pay statute.  Nonetheless, both by Mr. Lewis' appointment agreement and by statute, he was serving on "active duty" while attending the Uniformed Services University.  The service credit exclusions identified in 10 U.S.C. § 2126 are quite explicit exceptions to the general rule of "active duty," being confined expressly to retirement credit and years-of-service for basic pay, not also for separation.  Therefore, the court concludes that Mr. Lewis' time at the Uniformed Services University counts as "active service" for purposes of the separation statute, 10 U.S.C. § 1174.

Even so, the government argues that Mr. Lewis is ineligible for separation pay under 10 U.S.C. § 1174, *see* Def's Mot. to Dismiss at 9, because a DOD Instruction provides that a service member separated under "other than honorable conditions" is not eligible for separation pay. Department of Defense, Instruction No. 1332.29 ¶¶ 3.4, 3.4.8, *available at* http://www.dtic.mil/ whs/directives/corres/pdf/133229p.pdf (last modified Sept. 20, 2011).  Mr. Lewis contends that the court "must not enter judgment based on the proceedings before the Board of Inquiry," Pl.'s Opp'n at 12, because the procedures employed by the Board deprived him of due process, *id.* at 10-12.  Concededly, Mr. Lewis was denied the right to be present during the Board's proceedings, and he argues that his constitutional due process rights were abridged, *see* Pl.'s Opp'n at 10 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)), and that procedural rights afforded to him by a Navy regulation were contravened, *id.* (citing Rule 9(a)(2) of the Rules and Procedures for Courts and Boards of Inquiry).  Rule 9(a)(2) of the Rules and Procedures for Courts and Boards of Inquiry provides that a party before a Board of Inquiry "shall be advised of and accorded [the right] . . . to be present during the proceedings, except in accordance with paragraph 9b below and when the investigation is cleared for deliberations." Department of Defense, JAG Instruction 5830.1A, Enclosure (1): Rules and Procedures for Courts and Boards

of Inquiry at 9, Oct. 31, 2005, *available at* www.jag.navy.mil/library/instructions/5830_1A.pdf. Rule 9(b) allows a party to waive his right to be present. *Id.* at 10. In this case, Mr. Lewis, through his counsel, objected to the Board's proceeding *in absentia*, and therefore he did not waive his right to be present.[5]

While "determining who is fit or unfit to serve in the armed services is not a judicial province," decisions by the military services are nonetheless subject to judicial review on limited grounds. *Heisig v. United States*, 719 F.2d 1153, 1156 (1983). The scope of review focuses on determining whether the "action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, *or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.*" *Id.* (citing *Clayton v. United Sates*, 225 Ct. Cl. 593, 595 (1980)) (emphasis added).

"It is, of course, a fundamental tenet of our legal system that the [g]overnment must follow its own regulations. Actions by an agency of the executive branch in violation of its own regulations are illegal and void." *VanderMolen v. Stetson*, 571 F.2d 617, 624 (D.C. Cir. 1977) (voiding an Air Force proceeding that formed the basis for subsequent discharge because it failed to comply with Air Force regulations granting the right to counsel and the right to a verbatim transcript, among other things) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959)); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("[E]ven when granted unfettered discretion by Congress[,] the military must abide by its own procedural regulations should it choose to promulgate them."); *Wisotsky v. United States*, 69 Fed. Cl. 299, 309-11 (2006) (voiding a Navy Board of Inquiry proceeding where the composition of the board failed to include an officer of the same competitive category as the accused, as required by Navy rules); William C. Bryson, *"Military Pay Cases": An Introduction*, 65 Admin. L. Rev. 476, 480 (2013) ("The courts have increasingly viewed their responsibility as ensuring military administrative bodies follow procedures prescribed by statute and the military's own regulations, rather than delving deeply into the merits of underlying decisions."). Failure to accord Mr. Lewis his right to be present is by its very nature prejudicial. Accordingly, the court disapproves the proceedings before the Board of Inquiry.[6]

---

[5]Rule 9(d) dictates that "[i]n cases where nonjudicial punishment is contemplated on the basis of the record of a Court or Board of Inquiry before which the accused was not . . . accorded the rights of a party, the procedures shall be as prescribed in JAGMAN 0110d." JAG Instruction 5830.1A, Enclosure (1), at 10. The Manual of the Judge Advocate General ("JAGMAN") 0110d, in turn, allows for nonjudicial punishment proceedings to be conducted "telephonically, via video teleconference, or other similar remote means that provide for two-way voice communication." Department of Defense, JAG Instruction 5800.7F, Enclosure (1): JAGMAN, 0110, *Procedures for Initiation of Article 15, UCMJ, Hearing*, June 26, 2012, *available at* http://www.jag.navy.mil/library/instructions/JAGMAN2012.pdf . There is no evidence that Mr. Lewis was afforded the opportunity to participate before the Board via telephonic or video conferencing means.

[6]The court need not reach whether the Board's proceedings violated Mr. Lewis' constitutional due process rights because the documentary record shows that the Board did not furnish Mr. Lewis the rights afforded to him by Navy rules.

Although the proceedings before the Board of Inquiry were improper, the Court cannot award Mr. Lewis any relief at this time. Even if the court were to set aside the proceedings before the Board of Inquiry, the only result would be to reinstate him in the Navy, which would not entitle him to money damages. Voiding the discharge would not entitle him to separation pay because he would not be separated, and, as discussed above, Mr. Lewis is not entitled to any pay for the duration of his incarceration. Awarding equitable relief without an accompanying monetary award is beyond this court's jurisdictional reach. The Tucker Act, as amended, permits the court to restore a plaintiff to an office or position only if necessary "to provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2). In sum, no monetary relief is available because of the forfeiture provisions of 37 U.S.C. § 503(a).

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss, as converted to a motion for summary judgment, is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so ORDERED.

                                                s/ Charles F. Lettow
                                                Charles F. Lettow
                                                Judge